IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02789-PAB-KMT

JUANETTA LAWRENCE,

      Plaintiff,

v.

SCHOOL DISTRICT NO. 1, IN THE CITY AND COUNTY OF DENVER, a/k/a Denver
Public Schools, and
BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 1, IN THE CITY AND COUNTY
OF DENVER, a/k/a Denver Board of Education,

      Defendants.

---

**ORDER**

---

      This matter is before the Court on the Renewed Motion to Dismiss Plaintiff's First

Claim for Relief [Docket No. 63] filed by defendants School District No. 1 ("DPS") and

the Board of Education of School District No. 1 (the "Board").  Plaintiff Juanetta

Lawrence's first claim for relief alleges that defendants violated her Fourteenth

Amendment right to equal protection.  The Court has jurisdiction over this case

pursuant to 28 U.S.C. § 1331.

**I.  BACKGROUND**[1]

      Plaintiff Juanetta Lawrence is an African-American social worker licensed by the

State of Colorado.  Docket No. 58 at 2, ¶ 4.  Ms. Lawrence worked for defendants from

---

[1]The following facts are alleged in plaintiff's complaint and taken as true.

November 1997 until September 15, 2011.[2]  *Id*.  In August 2008, defendants notified

Ms. Lawrence that, for the 2008-2009 school year, her assignment as a social worker at

East High School would be reduced from five days a week to three days a week.  *Id*. at

4, ¶ 17.  Additionally, defendants notified Ms. Lawrence that, during the 2008-2009

school year, Heather Gardiner – who Ms. Lawrence alleges is a younger, less qualified

white female social worker – would be hired to work three days a week as a social

worker at East High School.  *Id*.  Thereafter, in April 2009, defendants notified Ms.

Lawrence that, for the 2009-2010 school year, Ms. Gardiner would take over as the

social worker at East High School.  *Id*.  Ms. Lawrence instead would be assigned to

three different charter schools for three days of the week and spend two days a week at

the Denver City Department of Human Services ("DHS").[3]  *Id*.

Ms. Lawrence alleges that her reassignment from East High School significantly

altered her duties and responsibilities.[4]  *Id*. at 4-5, ¶ 18.  Specifically, she claims that

her professional interactions with charter school and DHS personnel were of a different

nature than her interactions with DPS or Board personnel; that she had fewer

opportunities to develop cohesive working relationships with charter school and DHS

---

[2]DPS is a public school system and the Board is the final policy and decision maker for DPS.  Docket No. 58 at 2, ¶¶ 5-6.

[3]In her complaint, plaintiff alleges that she was assigned to two days a week at the Colorado State Department of Human Services.  Docket No. 58 at 4, ¶ 17. However, in her response to the motion to dismiss, plaintiff clarifies that she was reassigned to the Denver City Department of Human Services.  Docket No. 65 at 3.

[4]On August 28, 2009, Ms. Lawrence filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") against defendants for alleged race and age discrimination based on her reassignment.  Docket No. 58 at 4, ¶ 16.  The EEOC is currently investigating Ms. Lawrence's charge of discrimination.  *Id*.

personnel; and that, because she had to travel to various locations throughout the week, the cost of her commute increased significantly.  *Id*.

Ms. Lawrence alleges that she was reassigned because of her race and age since the reassignment was done without her knowledge or consent, was contrary to written protocol, and she "is not aware of any similarly situated social worker being given the same onerous work assignment."  *Id*. at 4-5, ¶¶ 17-18.

Ms. Lawrence also avers that, during the 2009-2010 school year, defendants allowed charter school administrators to criticize her for failing to complete a suicide risk assessment on a student despite the fact that defendants knew that plaintiff, as a social worker, does not have the training or education necessary to complete a suicide risk assessment without the assistance of a mental health professional.  Docket No. 58 at 5, ¶ 19.  Ms. Lawrence asserts that defendants relied on her failure to complete a suicide risk assessment to fire her.  *Id*. at 7-8, ¶ 33.  She claims that she "knows of no other situation wherein a similarly situated social worker was disciplined or otherwise penalized by Defendants for criticisms lodged against him or her by charter school personnel."  *Id*. at 5, ¶ 19.

In August 2010, defendants placed Ms. Lawrence on administrative leave for failing to adequately perform her job duties.  *Id*. at 6, ¶ 21.  In December 2010, defendants placed Ms. Lawrence on leave without pay and advised her that she would be terminated.  *Id*. at ¶ 22.  Subsequently, on September 15, 2011, defendants terminated Ms. Lawrence's employment and have not compensated her for all of her accrued sick and personal leave hours.  *Id*. at 6, ¶¶ 23-24.

After her termination, plaintiff commenced this action.  In her Second Amended Complaint [Docket No. 58], Ms. Lawrence asserts that defendants: (1) violated her equal protection rights under the Fourteenth Amendment;[5] (2) retaliated against her in violation of 42 U.S.C. §§ 1981, 1983; and (3) breached their employment contract. Docket No. 58 at 6-10.  On July 9, 2012, defendants filed this motion to dismiss plaintiff's first claim for relief brought pursuant to 42 U.S.C. § 1983.  Docket No. 63 at 1. Defendants argue that plaintiff's first claim should be dismissed because her complaint provides only conclusory allegations of discrimination and fails to identify any similarly situated individuals who were treated differently.  *Id*. at 6-7.

## II.  STANDARD OF REVIEW

The Supreme Court clarified the standard for granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  To withstand a motion to dismiss, a

---

[5]As defendants note in their motion to dismiss, plaintiff's first claim appears to be based on both a retaliation theory, *see* Docket No. 58 at 1, ¶ 1 and 7, ¶ 32, and a disparate treatment theory.  Plaintiff may not bring claims for retaliation under the Equal Protection Clause because no cause of action exists for retaliation under the Fourteenth Amendment.  *See Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ("we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination"); *Ratliff v. DeKalb Cnty.*, 62 F.3d 338, 340-41 (11th Cir. 1995) (retaliation claims may be brought under the First Amendment or Title VII, but not under the Equal Protection Clause); *Teigen v. Renfrow*, 511 F.3d 1072, 1085-86 (10th Cir. 2007) ("The mere illegality of a retaliatory action under a separate body of law does not [constitute a] . . . violat[ion] of the Equal Protection Clause . . . [i]f this court were to hold otherwise, every claim of unlawful retaliation against a government employer, whether brought under state or federal law, could be transformed into an equal protection claim simply by defining the relevant class as consisting of those employees who challenged the government's employment policies.") (citations omitted).  Thus, to the extent that plaintiff asserts a retaliation claim in her first cause of action, it will be dismissed.

complaint must have enough allegations of fact, taken as true, "to state a claim to relief

that is plausible on its face." *Twombly*, 550 U.S. at 570.  The Court has explained that

two principles underlie this standard.  First, "the tenet that a court must accept as true

all of the allegations contained in a complaint is inapplicable to legal conclusions."

*Iqbal*, 556 U.S. at 678.  Thus, mere "labels and conclusions" and "a formulaic recitation

of the elements of a cause of action" will not suffice; a plaintiff must offer specific

factual allegations to support each claim.  *Twombly*, 550 U.S. at 555.  Second, "only a

complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*,

556 U.S. at 679.  In other words, a plaintiff must offer sufficient factual allegations to

"raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Given

this standard, "determining whether a complaint states a plausible claim for relief . . . [is]

a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."  *Iqbal*, 556 U.S. at 679.  Thus, in ruling on a motion to

dismiss, a court should disregard all conclusory statements of law and consider whether

the remaining specific factual allegations, taken as true, plausibly suggest the

defendant is liable.  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214-15

(10th Cir. 2011).

### III.   ANALYSIS

In her first claim for relief, Ms. Lawrence asserts that defendants violated her

right to equal protection under the law by discriminating against her on the basis of her

race and age.  Docket No. 65 at 8-9.  Specifically, Ms. Lawrence seems to assert that

two actions taken by defendants violated her rights under the Fourteenth Amendment:

5

first, her reassignment from East High School to three charter schools and DHS; and, second, her termination due to her failure to complete a suicide risk assessment. *Id*. at 10-11.

To prevail on a § 1983 claim, a plaintiff must establish that "defendants acted under color of state law and that the defendants' actions deprived the plaintiff of some federal right." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004). Defendants do not dispute that they acted under color of state law.  The question, therefore, is whether defendants violated Ms. Lawrence's constitutional rights under the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause mandates that no state deny any person within its jurisdiction the equal protection of the laws.  U.S. Const. amend. XIV.  An equal protection violation occurs when a state actor treats someone differently than another who is similarly situated.[6] *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) ("The Equal Protection Clause requires the government to treat similarly situated people alike").  "In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (quoting *Baca v. Sklar*, 398 F.3d 1210, 1218 n. 3 (10th Cir. 2005)).  "To make out

---

[6]Different types of equal protection claims call for different forms of review; for example, a claim that a state actor discriminated "on the basis of a suspect (e.g., race), quasi-suspect (e.g., gender), or a non-suspect classification calls for strict, intermediate, or rational basis scrutiny, respectively." *Brown v. Montoya*, 662 F.3d 1152, 1172 (10th Cir. 2011) (citing *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1109-10 (10th Cir. 2008)).

a prima facie case of discrimination, [plaintiff] must demonstrate (1) membership in a protected class, (2) adverse employment action, and (3) disparate treatment among similarly situated employees." *Id.* (quoting *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005)).  Thus, "to assert a viable equal protection claim, plaintiff[] must first make a threshold showing that [she was] treated differently from others who were similarly situated to [her]."[7]  *Brown v. Montoya*, 662 F.3d 1152, 1172-73 (10th Cir. 2011) (citing *Barney*, 143 F.3d at 1312).  Although "the 12(b)(6) standard does not require that [plaintiff] establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether [plaintiff] has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

With regard to plaintiff's claim of discrimination based on her reassignment, it is undisputed that Ms. Lawrence is a member of a protected class.  Second, Ms. Lawrence alleges that the reassignment was a "significant change" with "significantly different responsibilities" that impacted her professional interactions and her opportunities to develop cohesive working relationships.  Docket No. 58 at 4-5, ¶ 18. Third, Ms. Lawrence claims that Ms. Gardiner, a younger, less qualified white employee, was given preferential treatment because she was not required to work at three different charter schools and DHS.  *Id.* at 4, ¶ 17; Docket No. 65 at 10.  Plaintiff's allegations are somewhat vague as to the extent to which Ms. Gardiner is similarly

---

[7]The "Equal Protection Clause protects persons, not groups." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 597 (2008) (internal quotation marks omitted).  The Supreme Court's "equal protection jurisprudence has typically been concerned with governmental classifications that affect some groups of citizens differently than others." *Id.* at 601 (internal quotation marks omitted).  In such a case, a plaintiff alleges that she has been "arbitrarily classified as [a member] of an identifiable group." *Id.*

situated to plaintiff.  Nevertheless, the Court finds that Ms. Lawrence has sufficiently alleged a prima facie case of disparate treatment because she has alleged that her reassignment qualifies as an adverse employment action and has identified at least one similarly situated younger, non-African-American employee who was treated more favorably.  *See Orr*, 417 F.3d at 1149.  Accordingly, the Court will deny defendants' motion to dismiss Ms. Lawrence's equal protection claim as it relates to her reassignment.

Ms. Lawrence, however, has failed to allege sufficient facts to show that her termination constitutes disparate treatment.  Although Ms. Lawrence satisfies the first two elements of her prima facie case, she has not sufficiently identified similarly situated employees who were not terminated for comparable conduct.  *Orr*, 417 F.3d at 1149.  Individuals are considered "similarly situated" when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of "comparable seriousness."  *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (analyzing whether employee was "similarly situated" in Title VII race discrimination case); *see Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004) (applying this "similarly situated" test to §§ 1981 and 1983 claims).

Ms. Lawrence's complaint alleges that she was terminated in part because she failed to perform a suicide risk assessment.  Docket No. 58.  She claims that, because she "knows of no other situation wherein a similarly situated social worker was disciplined or otherwise penalized by Defendants for criticisms lodged against him or her by charter school personnel," her termination must be based on her race and age.

8

*Id*. at 5, ¶ 19.  However, Ms. Lawrence fails to present specific facts about the race or age of other similarly situated social workers, whether these social workers also failed to perform a suicide risk assessment, and how the punishment, if any, given to these similarly situated social workers differed from her termination.  *See Brown v. Eppler*, 788 F. Supp. 2d 1261, 1272-73 (N.D. Okla. 2011) (granting summary judgment to defendants because African-American plaintiff failed "to provide any evidence that Caucasian passengers engaging in conduct similar to his own were not subjected to bans from MTTA buses"); *Lollis v. City of Eufaula*, 249 F. App'x 20, 26 (10th Cir. 2007) (finding that plaintiff had not shown that he was treated differently than similarly situated police officers because there was no evidence in the record of similarly situated officers).  Because Ms. Lawrence has not identified a comparator in her complaint, i.e., a younger, non-African-American social worker who was not terminated even though he or she failed to perform a suicide risk assessment, she has not plausibly alleged that her termination was based on discriminatory animus.[8]  *Cf. Townsend-Johnson v. Cleveland*, 2012 WL 2369335, at *4 (10th Cir. June 25, 2012) (finding that a plaintiff had sufficiently alleged an equal protection violation claim by "identifying a *specific* group of individuals – non-female-African-American principals in Rio Rancho school district [who were not terminated even though their] schools did not meet AYP goals").  Ms. Lawrence's general allegations that she knows of no other individuals terminated for the same conduct are insufficient to raise a viable claim of discrimination because

---

[8]To the extent plaintiff raises a "class-of-one" discrimination alleging that her termination was arbitrary or irrational, the Supreme Court has held that "the class-of-one theory of equal protection does not apply in the public employment context." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 597 (2008).

they are wholly conclusory and provide only a "formulaic recitation" of the elements of a claim. *Khalik*, 671 F.3d at 1193.  Accordingly, the Court will dismiss Ms. Lawrence's equal protection claim as it relates to her termination.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Renewed Motion to Dismiss Plaintiff's First Claim for Relief [Docket No. 63] is **GRANTED** IN PART and **DENIED** IN PART.  It is further

**ORDERED** that plaintiff's Fourteenth Amendment equal protection claim based on her termination and any claim based on retaliation are dismissed.

DATED March 4, 2013.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge